IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2008

Charles R. Fulbruge III
Clerk

No. 08-10027
Summary Calendar

ETTA LOWERY

Plaintiff – Appellant

v.

ALLSTATE TEXAS LLOYDS INC, in its assumed or common name, also
known as Allstate Insurance Co; ALLSTATE COUNTY MUTUAL
INSURANCE COMPANY, in its assumed or common name, also known as
Allstate Insurance Co; SANDRA MOBLEY, Individually; BRIAN VIOHL,
Individually

Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-cv-01886

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Etta Lowery appeals the district court's grant of summary judgment in
favor of the defendants (collectively "Allstate") on her claims of discrimination
and retaliation under the Texas Commission on Human Rights Act. We affirm

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

because Lowery did not timely file a charge of discrimination as required under Texas law.

## I. FACTS AND PROCEDURAL BACKGROUND

Lowery, a long-time employee of Allstate, began her career with the company in Wisconsin. In the mid-1990s, Lowery relocated to Texas and was employed by Allstate as a Market Business Consultant ("MBC"), a sales management position. In 2005, Allstate implemented a company-wide reduction-in-force ("RIF") that reduced the total number of sales management positions in Texas from 75 to 65. Of the ten employees laid off in the RIF, six were MBCs, Lowery among them.

On March 7, 2005, Allstate's human resources manager, Ross Carnes, met with Lowery to explain that her position had been eliminated as part of the RIF. At this meeting, Lowery was provided with a form letter that contained the following relevant language:

> A Corporate business decision has been made to transition the Regional Field Sales Leadership functions to align with the new Field Leadership Enablement (FLE) project. As a result of this business decision, your position as Market Business Consultant is being eliminated. Every effort will be made to place you in a position at Allstate for which you qualify. This letter is formal notification that, should you either not be offered a position or should you choose not to accept an offer for an alternative position at Allstate by May 6, 2005, your employment will be terminated.

Carnes then informed Lowery that she would not be eligible for any other positions with Allstate because she had previously received an "unacceptable" performance review. On this same day, Lowery turned in her company computer, employee identification badge, and company credit card. Lowery never again performed any work for Allstate. However, she remained on the Allstate payroll until September 30, 2005.

Lowery filed a complaint with the Texas Commission on Human Rights on October 27, 2005, alleging that Allstate had discriminated against her on the

basis of age and race and retaliated against her for engaging in protected activity. In August 2006, after receiving a right-to-sue letter, Lowery sued Allstate in Texas state court, alleging that her termination was motivated by age- and race-based discrimination and unlawful retaliation for a previous charge of discrimination that she filed against Allstate in Wisconsin.

Allstate removed the suit to federal court and then responded, arguing first that Lowery's claims should be dismissed because her initial charge of discrimination and retaliation was untimely. Alternatively, Allstate argued that Lowery's termination was based on the same race-neutral, job-performance factors that were used to evaluate every MBC under the RIF. According to Allstate, Lowery's termination was the result of her declining performance, not a discriminatory or retaliatory animus.

The district court dismissed the claims against Defendants Mobley and Viohl. The court then granted summary judgment in favor of Allstate, holding that Lowery's suit was barred because she failed to timely file an administrative charge of discrimination. The district court also held that even if Lowery's administrative charge was deemed to be timely filed, she had not rebutted the legitimate, nondiscriminatory reasons that Allstate offered for her termination. Lowery timely appealed the judgment in favor of Allstate as to her race discrimination and retaliation claims. On appeal, she does not challenge the dismissal of Defendants Mobley and Viohl, nor the finding that she abandoned her age discrimination claim.

## II. DISCUSSION

We review a summary judgment de novo, applying the same standard as did the district court. Roberson v. Alltel Info. Sys., 373 F.3d 647, 650 (5th Cir. 2004). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence on file and draw all reasonable inferences therefrom in the light most favorable to Lowery, the nonmovant. Roberson, 373 F.3d at 651.

Lowery alleges that Allstate's actions violated the Texas Commission on Human Rights Act, which prohibits discrimination and retaliation by employers. See Tex. Lab. Code Ann. § 21.001 et seq. (Vernon 2006); Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487-88 (5th Cir. 2004). However, before suing her employer, an aggrieved employee must first exhaust administrative remedies. Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 485-86 (Tex. 1991). The Act provides that an administrative complaint "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann. § 21.202(a). This 180-day time limit is "mandatory and jurisdictional." Ashcroft v. HEPC-Anatole, Inc., 244 S.W.3d 649, 650 (Tex. App. 2008) (citing Specialty Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996)).

Under this Act, the "limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." DeMoranville, 933 S.W.2d at 493. Thus, in an unlawful discharge case, the final date of employment will not always trigger the running of the limitations peroid. Rather, the 180-day period commences when an employee receives unequivocal notice of his termination or when a reasonable person would know that he will be terminated. See Johnson & Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 928 (Tex. 1996); Texas Parks & Wildlife Dep't v. Dearing, 150 S.W.3d 452, 459 (Tex. App. 2004). This is analogous to our application of similar limitations periods contained in federal anti-discrimination statutes. See Conaway v. Control Data Corp., 955 F.2d 358, 362 (5th Cir. 1992).

As noted above, Allstate provided Lowery with a form letter on March 7, 2005, informing her that her position was being eliminated. The letter

suggested that efforts would be made to place her in another position for which she was qualified. Lowery argues that the limitations period did not begin on this March date because the form letter did not unequivocally inform her that she was ineligible for another position at Allstate. Instead, she suggests that the operative date is September 19, 2005, when Allstate mailed her a letter that stated: "This letter is formal notification that your employment is being terminated effective Friday, September 30, 2005." Alternatively, she argues that the May 6, 2005 date referenced in the form letter was the first date on which she could have reasonably known that she had actually been terminated.

These arguments rely on the date of formal notification of termination. Such an emphasis is at odds with the settled jurisprudence, under which "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." DeMoranville, 933 S.W.2d at 492 (quoting Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)) (emphasis in original). What Lowery disregards is that simultaneously with delivery of the letter, Carnes orally informed her that she was not qualified for any other positions at Allstate. At this point, any reasonable employee would or should have known that her employment with Allstate was at an end.

Lowery's own account of her meeting with Carnes confirms this point. Lowery's deposition reveals that, in response to her request for access to Allstate's internal job posting system, Carnes informed her that "there would be no way because . . . once you get an unacceptable rating, you will not be able to get another position in Allstate Insurance Company." Lowery further testified that Carnes "informed me that [there] would be no way that I could continue my employment with Allstate because of my unacceptable performance rating." Thus, Lowery's subjective understanding of the import of the letter and meeting with Carnes supports our objective determination that any reasonable employee would have known that her employment was terminated as of March 7, 2005.

Because Lowery was "informed of the allegedly discriminatory employment decision" on March 7, 2005, the 180-day period for filing an administrative complaint expired on September 3, 2005. Lowery did not file a charge with the Texas Commission on Human Rights until October 27, 2005. Because her discrimination complaint was untimely, her suit is barred. We therefore do not analyze the merits of her claims.

The judgment of the district court is AFFIRMED.